UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

JOHN F. BARKER,                          )
                                         )
        Plaintiff,                       )
                                         )
    vs.                                  )        Case No. 4:05-CV-01173 JCH
                                         )
MISSOURI DEPARTMENT OF                   )
CORRECTIONS,                             )
                                         )
        Defendant.                       )

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant Missouri Department of Corrections' ("MDOC") Motion for Summary Judgment (Doc. No. 40), filed November 16, 2006. The matter is fully briefed and ready for a decision.

## BACKGROUND

At all relevant times, MDOC employed Plaintiff as a Correctional Officer I at the Potosi Correctional Center ("PCC"). In 2002 Plaintiff was appointed shop steward by the Missouri Corrections Officers Association.[1] (Memo. in Opp'n, Doc. No. 44 Ex. 4 at pg. 57-64). His duties as shop steward included assisting employees in filing grievances. (Id. at pg. 63-64). During 2003, Plaintiff worked the 3:30 pm to 11:30 pm shift on the special needs unit ("SNU"), which houses inmates with mental diseases and disabilities. (Memo. in Supp., Doc. No. 41 ¶ 4-5). The other officers on his shift were William Bjork ('Bjork"), Lola Brannum ("Brannum"), Rodney Beers ("Beers"),

---

[1]Although not called a "union," this association allows its members to collectively bargain with the State of Missouri about employment rights and benefits. (Memo. in Opp'n, Doc. No. 44 Ex. 4 at pg. 57-64).

Reuben Cook ("Cook"), and Anthony Ketcherside ("Ketcherside"). (Id. at ¶ 9). Sharon Gifford ("Gifford") managed the SNU. (Id. at ¶ 7).

On June 23, 2003 Gifford entered the control room and asked Bjork, who was new to SNU, if he enjoyed working in it. (Memo. in Supp. ¶ 12-13). Bjork responded that he did not because the inmates behaved poorly and were different than other inmates.[2] (Id. at Ex. G, pg. 12). Bjork stated that he had no SNU training, and Gifford told him, in a "commanding voice," that he could not reenter the SNU without receiving training. (Id. at Ex. A, pg. 1). Upon hearing this statement, Brannum said she had worked in the SNU for a year, but had not received any training. (Id.). Gifford responded that "you don't need the training, women are better by and large as they do a better job than men do anyway and are more patient and nurturing than men and we have had no complaints about them."[3] (Id.). Despite this alleged rebuke, Bjork was never removed from the SNU. (Id. at Ex. G, pg. 12). On June 24, 2006, Plaintiff helped Bjork draft a memorandum about the incident, which was given to Captain Garry Branch. (Id. at Ex. A). On June 27, Bjork filed an employee grievance, drafted by Plaintiff, about the incident. (Id. at ¶ 25-26).

On July 1, 2003, an inmate told Officer Brownlee ("Brownlee"), who works the shift immediately following Plaintiff's, that Plaintiff and Beers used force on him. (Id. at Ex. C, pg. 5). The inmate stated that Plaintiff and other officers forced him into his cell and slammed his leg in the cell door. (Id.). Brownlee asked the inmate why his shower shoe was outside his cell door and was told

---

[2]This conversation took place in front of Beers, Ketcherside, and Cook. (Memo. in Supp., Ex. A). Plaintiff's employee grievance does not list Cook as a witness but does list Officer Skaggs as a witness. (Id. at Ex. B).

[3]Gifford recalls this conversation differently. She testified that she stated "sometimes women get along better because offenders see them as more nurturing, so that could help you out" and "we need to get some training for everybody."(Id. at pg. 12-13).

that he lost it during the struggle. (Id.). Brownlee observed injuries on the inmate's shoulder and right

thigh. (Id. at Ex. C ¶ 12). Two other inmates corroborated the inmate's story. (Id.).

According to MDOC policy, "the superintendent/designee shall be immediately notified of

any use of force. Reporting procedures established in IS20-3.2 Use of Force Reports shall be

followed." (Memo. in Opp'n, Doc. No. 44 Ex. 6 at III(G)). MDOC policy requires that use of force

reports be filled out and submitted to a supervisor "prior to leaving duty." (Memo. in Supp., Doc. No.

41 Ex. C ¶ 3, citing IS20-3.2). On July 1, 2003 Brownlee found that no use of force report had been

filed. (Id. at Ex. C ¶ 15).

MDOC has a nondiscretionary policy that requires it to investigate any claim of an unreported

use of force. (Id. at Ex. D ¶ 4). The investigation into this incident occurred during July, 2003. The

investigator, Mike O'Brien ("O'Brien"), determined that "it appears an unreported use of force

occurred,"[4] but was unable to determine if "the force was excessive." (Memo. in Opp'n, Doc. No.

44 Ex. 2 at pg. 2). O'Brien's investigation[5] yielded the following information. Brannum said that

_____

[4]Plaintiff believes that this conclusion is improper. Plaintiff relies on the statement of Don Roper ("Roper"), the superintendent of PCC, who testified that soft empty hand escorts (touching to escort), without more, are generally not reportable uses of force. (Memo. in Opp'n, Doc. No. 44 Ex 12 at pg. 25). Roper also testified that he construed the use of force in this particular situation as a reportable use of force. (Id. at pg. 26).

[5]Plaintiff believes that O'Brien's report was biased towards him. Specifically, he complains that the inmate was not allowed to change his story on September 15, 2006. (Memo. in Opp'n, Doc. No. 44 Ex. 11). The memoranda containing this information are dated December 11, 2003 and December 13, 2003. (Id.). The investigation closed long before this time, and Plaintiff received his punishment on December 1, 2006. (Id. at Ex. 27). Second, Plaintiff presents the unsworn affidavit of Alyce Frayer ("Frayer"), a nurse at PCC. Frayer states that she examined the inmate on July 2, 2003, determined that his wounds looked self-inflicted, and that this report is no longer in the PCC computer records. (Id. at Ex. 13). Finally, Plaintiff contends that the investigator's failure to interview nurse Charles Klingensmith, who was on the interview list, biased the investigation. (Id. at Ex. 1). O'Brien explained that he did not remember why he failed to interview the nurse and that sometimes during the course of an investigation he determines that some interviews are unnecessary. (Id. at Ex.

Plaintiff and another officer used a "soft empty hand escort," she did not see the inmate's leg get hit by the cell door, and believed the inmate pushed his shower shoe outside of the cell. (Id. at pg. 4). Beers[6] stated that a "soft empty hand escort" was used, called this a "nonuse" of force, and denied inmate's leg was caught in the door. (Id. at pg. 5). Cook stated that two officers grabbed the inmates arms,"reluctantly" admitted that this was a forcible escort, and said no log entry was made. (Id. at pg. 6). Cook later told O'Brien that he felt deceived by the interview process, but did not change any of his statements. (Id. at pg. 7). Ketcherside stated that he did not see what went on near the inmate's door. (Id. at pg. 8). Plaintiff stated that he and another officer touched the inmate's arm to escort him to his cell, that he was not caught in the cell door, and that they left no marks on him. (Id. at pg. 9).

O'Brien also interviewed Terrance Johnson ("Johnson"), a recently paroled inmate who witnessed the incident. (Memo in Supp. ¶ 48). Johnson told him that Plaintiff and another officer grabbed the inmate, pushed him into his cell, and hurt his leg. (Id. at Ex. C ¶ 30). Johnson also told him that he originally wrote a note stating that no force was used because he feared it would jeopardize his parole. (Id. at Ex. C ¶ 31).[7]

MDOC policy requires an annual performance review of its corrections officers. (Id. at Ex. D ¶ 5). Plaintiff received his 2003 reviews beginning in October of that year. He received a rating of unsatisfactory, the lowest rating possible, because he had thirteen unscheduled absences, had locked

---

9, pg. 9-12).

[6]The copy of O'Brien's report given to the Court has the names blacked out; however, Plaintiff has provided the names of each officer.

[7]Plaintiff alleges that O'Brien's report was biased because he did not ignore Johnson's testimony due to the conflicting reports. (Memo. in Opp'n, Doc. No. 44 pg. 5).

himself out of the entry sallyport tower without his keys or sidearm,[8] and failed to report a use of force. (Id. at ¶ 7-8; Memo. in Opp'n, Ex. 27). As a consequence of this poor rating, Plaintiff had to participate in an Employee Performance Planning Appraisal, which he successfully completed.[9] (Memo. in Supp., Ex. D ¶ 12-15). Finally, on December 1, 2003, George Lombardi, the director of the Division of Adult Institutions,[10] notified Plaintiff that he was being suspended for five days because he failed to report a use of force, tried to mislead investigators and solicit false testimony, and had an unauthorized discussion about a confidential grievance that was under review. (Memo. in Opp'n, Ex. 27).

Plaintiff filed his Complaint on July 27, 2005 (Doc. No. 2) and amended it on April 4, 2006. (Doc. No. 23). Plaintiff alleges that Defendant violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) et seq by retaliating against him for reporting the alleged sexual harassment by Gifford. (Id. at ¶ 9-11). Plaintiff alleges that Defendant retaliated by 1) notifying him of an investigation of an unreported use of force; 2) making a log entry complaining about his use of sick time; 3) by denying him of a copy of his "call-out" form; 4) giving him, on November 11, 2003, an

---

[8]The sallyport tower is the main entrance and exit to the PCC for vehicles and deliveries. (Memo. in Supp., Ex D ¶ 9). According to Roper, when Plaintiff locked himself out, he cut himself off from the rest of the prison and jeopardized the safety of himself and fellow officers. (Id. at ¶ 9). MDOC considers Plaintiff locking himself out as serious breach of security and grounds for discipline.(Id. at ¶ 11).

[9]Plaintiff contends that Defendant falsified documents to show that he completed this program, but provides no evidence that this occurred.

[10]George Lombardi has final authority over whether a MDOC employee will be disciplined or not. (Mot. to Supplement , Doc. No. 48, Terry Moore Aff. ¶ 4-6).

allegedly false[11] employee performance review; 5) giving him, on November 23, 2003, an allegedly false performance review; 6) disciplining him on December 1, 2003 for an unreported use of force; 7) giving him another false performance review on January 6, 2004; 8) improperly "facilitated false documents" that he successfully completed an employee performance review; 9) withholding his paycheck for several days due to a payroll error; and 10) transferring him to another facility in April 2005. (Supp. Mot., Doc. No. 42, Ex. H). Defendant filed this Motion for Summary Judgment on November 16, 2006. (Doc. No. 40).

## SUMMARY JUDGMENT STANDARD

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Citrate, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at

---

[11]Plaintiff seemingly contends that these reviews were false because they reference the unreported use of force that Plaintiff contends did not occur.

247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. <u>Anderson</u>, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. <u>Anderson</u>, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. <u>Id</u>. at 249.

## **DISCUSSION**

Plaintiff's remaining allegations boil down to three claims:[12] that the use of force investigation, his unsatisfactory performance reviews, and his five day suspension were retaliatory.

Title VII prohibits employers from discriminating against an employee who "has opposed any practice made an unlawful employment practice by this subchapter" or who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Because Plaintiff has no direct evidence of retaliation, his claim is analyzed under the burden-shifting framework set forth in <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973); <u>Twymon v. Wells Fargo & Co.</u>, 462 F.3d 925, 936 (8th Cir. 2006). Under this framework, Plaintiff has the initial burden of establishing a prima facie case of retaliation. <u>Clark v. Johanns</u>, 460 F.3d 1064, 1067 (8th Cir. 2006). Once Plaintiff satisfies this burden, Defendant must offer a legitimate, non-discriminatory reason for the employment action. <u>Quick v. Wal-Mart Stores, Inc.</u>, 441 F.3d 606, 610 (8th Cir. 2006). The burden of production then returns to Plaintiff to show that the employer's reason was a pretext for discrimination. <u>Id</u>.

To establish a prima facie case of retaliation, Plaintiff must present evidence that 1) he

---

[12]Plaintiff appears to have abandoned retaliation claims 2), 3), 9), and 10).

engaged in a protected activity; 2) an adverse employment action was taken against him; and 3) a causal connection exists between the two. Thompson v. Bi-State Dev. Agency, 463 F.3d 821, 826 (8th Cir. 2006). The threshold of proof to establish a prima facie case is "minimal." Logan v. Liberty Healthcare Corp., 416 F.3d 877, 881 (8th Cir. 2005), citing Young v. Warner-Jenkinson Co., 152 F.3d 1018, 1022 (8th Cir. 1998).

Not all complaints are considered statutorily protected activity; rather "[Title VII] ... encompasses opposition to practices that are not unlawful, if an employee acted based on a good faith, objectively reasonable belief that the practices were unlawful." Wallace v. DTG Operations, Inc., 442 F.3d 1112, 1114 (8th Cir. 2006),citing Evans v. Kansas City, Mo. Sch. Dist., 65 F.3d 98, 100 (8th Cir. 1995). The Supreme Court has held that isolated comments or sexual remarks are not actionable under Title VII because no reasonable person can believe they violate Title VII. Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 271 (2001) (per curiam); see also Curd v. Hank's Discount Fine Furniture, Inc., 272 F.3d 1039, 1041-42 (8th Cir. 2002) (holding no reasonable person could believe male employee opening his pants and tucking in his shirt violated Title VII).

The Court finds that no reasonable person could objectively believe that Gifford's comment violated Title VII. Accordingly, Plaintiff cannot make out a prima facie case against Defendant on any of the remaining claims because he did not engage in a protected activity.

## 1) Initiation and Conduct of the Use of Force Investigation

Even assuming that Plaintiff could make a prima facie case regarding the use of force investigation, Defendant has offered a legitimate, non-discriminatory reason for investigating Plaintiff: an allegation of excessive force was made and corroborated contemporaneously by two inmates. Defendant also offers a legitimate, non-discriminatory reason for why it conducted the investigation

the way it did: the investigator found some evidence more credible than other evidence. (Reply, Doc. No. 46).

Thus, the burden shifts back to Plaintiff to show that Defendant's reasons are a pretext for discrimination. Making a showing of pretext requires "more substantial evidence than it takes to make out a prima facie case, ... because unlike evidence establishing a prima facie case, evidence of pretext ... and retaliation is viewed in light of the employer's justification." Id. (citations omitted). To carry this burden, the employee must show that the proffered reason was "unworthy of credence." Wallace v. Sparks Health Sys., 415 F.3d 853, 860 (8th Cir. 2005), quoting Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 143 (2000). An employee can demonstrate pretext by showing the employer meted out more lenient treatment to similarly situated employees who did not engage in the protected activity. Salitros v. Chrysler Corp., 306 F.3d 562, 570 (8th Cir. 2002). Another method is to show that the employer's proffered reason has no basis in fact. Smith v. Allen Health Sys., Inc., 302 F.3d 827, 835 (8th Cir. 2002).

Plaintiff cannot make the needed showing of pretext. He asserts that O'Brien and Defendant came to the wrong conclusion. The relevant inquiry is whether the investigation, and the conduct thereof, was a pretext for retaliation, not if Plaintiff actually did what was he accused of doing. Scroggins v. Univ. of Minnesota, 221 F.3d 1042, 1045 (8th Cir. 2000) (relevant inquiry is "whether [MDOC] believed [Plaintiff] was guilty of the conduct justifying [an investigation]."). Plaintiff presents no evidence that O'Brien reached his conclusions with a discriminatory motive or that Brownlee reported the claim for a discriminatory reason. Plaintiff's evidence does not show that O'Brien had no basis in fact for coming to his conclusions or that a similarly situated person was treated differently in a use of force investigation. To the contrary, O'Brien relied on the statements

by the two other inmates, Johnson, and Cook. Thus, these claims of retaliation fail because no reasonable jury could find pretext existed.

### 2) Defendant's Performance Evaluations and Five Day Suspension

Plaintiff claims that he was given poor performance reviews in retaliation for reporting Gifford's actions. He also claims his suspension was retaliatory. Defendant responds that even if Plaintiff presents a prima facie case on these claims, it has a legitimate, non-discriminatory reason for both.

Defendant's reason for Plaintiff's poor performance reviews is that he was not doing his job properly. Specifically, he had too many unscheduled absences, locked himself out of the sallyport, and did not report a use of force. Plaintiff does not deny that the absences or the sallyport incident occurred. The Court finds Defendant's reason is legitimate and non-discriminatory. Defendant has also provided a non-discriminatory, legitimate reason for the five day suspension: an investigation found that he had failed to report a use of force and then tried to interfere with the investigation.

Plaintiff's main argument of pretext is that the use of force never occurred. The Court does not find this reason shows Defendant's actions were pretextual. Grey v. City of Oak Grove, 396 F.3d 1031, 1035 (8th Cir. 2005) (justifications and denials not evidence of fabricated charges). As the Eighth Circuit explains, the question is "whether [MDOC's] articulated reason[s] for [Plaintiff's poor performance reviews and suspension were] a pretext for retaliation, not whether [Plaintiff] actually did what he was accused of doing or whether the discharge was warranted." Id. Thus, the relevant inquiry is "whether [MDOC] believed [Plaintiff] was guilty of the conduct justifying [his poor reviews and suspension]." Scroggins v. Univ. of Minnesota, 221 F.3d 1042, 1045 (8th Cir. 2000).

The evidence before the Court shows that MDOC honestly believed Plaintiff had performed

his job poorly and failed to report a use of force. Furthermore, no evidence exists that George Lombardi, the ultimate decision maker, had any bias towards Plaintiff. Additionally, no evidence is before the Court that O'Brien was biased against him or did not honestly believe what he concluded in his report. No reasonable jury could find, based on the evidence presented, that MDOC's proffered reason was not worthy of credence. The Court will grant Defendant's Motion for Summary Judgment.

**<u>CONCLUSION</u>**

Accordingly,

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment (Doc. No. 40) is **GRANTED**, and Plaintiff's claims are dismissed with prejudice. An appropriate Judgment will accompany this Memorandum and Order.

**IT IS FURTHER ORDERED** that all remaining motions are **DENIED** as moot.

Dated this 19th day of December, 2006.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE